MARY A. S. PIERREPONT ET AL. *v.* ZONING COMMISSION OF THE TOWN OF RIDGEFIELD ET AL.

KING, C. J., ALCORN, HOUSE, COTTER and RYAN, Js.

464

Argued December 6, 1966—decided January 25, 1967

*John E. Dowling,* for the appellants (plaintiffs).

*Romeo G. Petroni,* for the appellee (defendant Tuccio), and, on the brief, *Thomas W. VanLenten,* for the appellee (named defendant).

COTTER, J.   The defendant zoning commission, after a public hearing, amended the Ridgefield zoning regulations to include a new residence R5-1 zone and granted a change of zone affecting approximately thirty-three acres from residence R-1 to the new residence R5-1.  At the time of the change of zone, permitted uses in a residence R-1 zone included one-family and two-family residences on a minimum lot of one acre, resident professional offices, farming establishments, customary home occupations, church facilities, parks and municipal buildings, and schools.[1]   Ridgefield Zoning Regs. § 5 (1961).  The new residence R5-1 zone, in addition to the uses allowed in a residence R-1 zone, permits the construction of two-story garden-style apartment buildings, subject to special requirements such as setbacks, maximum land usage, floor area of the dwelling units, and parking facilities.  The plaintiffs, who own property in the immediate vicinity, appealed to the Court of Common Pleas, claiming that the action of the commission, on several specific grounds, was illegal, arbitrary and in abuse of the commission's discretion.  A prospective developer, Jerry Tuccio, claiming to own a substantial portion of the rezoned property, was allowed to intervene as a party defendant.  The present appeal has been taken by the plaintiffs from a judgment dismissing their appeal in the Court of Common Pleas.

The plaintiffs have raised three claims on appeal. The first is that the commission's action in granting the change of zone was inconsistent with the town's comprehensive plan and was not shown to have been

---

[1] The zoning regulations have since been amended to eliminate two-family residences from the permitted uses in a residence R-1 zone.  Ridgefield Zoning Regs. § 5 (1966).

justified by any change in conditions. Zoning in Ridgefield is governed by chapter 124 of the General Statutes. As such, it is subject to the implicit requirement of General Statutes § 8-2 that any zone change must be in harmony with the comprehensive plan. *Allin* v. *Zoning Commission*, 150 Conn. 129, 133, 186 A.2d 802. The comprehensive plan for Ridgefield consists of the zoning regulations themselves and the zoning map which has been established pursuant to those regulations. See *Zandri* v. *Zoning Commission*, 150 Conn. 646, 649, 192 A.2d 876. The regulations, the zoning map and the record of the public hearing before the commission, a portion of which has been printed in the appendix to the plaintiffs' brief (see Practice Book § 719), reveal the following circumstances. The area in question is a largely undeveloped tract located near the main business center of town. It is bounded on the north by a business B-1 zone and on the east by a light industry B-2 zone, which is the town's least restrictive zoning classification. Several business establishments are situated in the general vicinity to the north and the east, across Grove Street, of the rezoned area. The property to the south consists of two large parcels, one lying in the business B-1 zone and the other in a residence R-1 zone. The Elms Inn, which is a nonconforming business use, is located on the latter parcel. To the west lie Main Street, recognized by the commission as an historical and aesthetic asset of the community, and, across Main Street, a residence R-1 zone in which are located the homes of the appealing plaintiffs. A tract of seven and one-half acres, rezoned by the commission in 1960 to allow garden-style apartments, is in the immediate vicinity, lying somewhat south and east of the property presently under con-

sideration. This earlier action by the commission was also challenged and was affirmed. See *Zandri v. Zoning Commission,* supra. The entire area is within a short distance of the civic and commercial center of the town.

A number of closely prescribed restrictions have been incorporated into the new zone in an attempt to harmonize any proposed use of the land in question with the surrounding area. As enacted by the commission, the provisions relating to the new zone limit the land area on which buildings may be constructed to 25 percent of the total area involved and allow no more than ten apartment units per acre. In addition, a setback requirement of 250 feet from Main Street is designed to preserve the historical atmosphere of the Main Street area and serves as a buffer between the properties of the plaintiffs and any garden apartments which might be developed as a result of the zone change. In view of the foregoing facts, including the proximity of the rezoned area to properties zoned for commercial and apartment uses, and the restrictive provisions adopted by the commission to preserve the general tenor of the entire area, it cannot be said that the commission's action was in conflict with the town's comprehensive plan.[2]

The plaintiffs also claim that there had not been any change in conditions affecting the area in ques-

---

[2] Although there was some evidence before the commission that the town sewerage system could not adequately serve apartments in this location, the commission felt that the necessary facilities were available. In light of the preliminary steps which had been taken toward an expansion of the sewerage plant if it became necessary, we cannot say that the commission abused its discretion in this regard. In addition, the zoning regulations provide that no apartment building shall be erected in an R5-1 zone unless public water and sewer services are available and unless a development plan for the entire premises has been approved by the commission.

tion which could justify the action taken by the commission. In amending its zoning regulations, and in rezoning this particular property, the commission was acting as a legislative body. *Metropolitan Homes, Inc.* v. *Town Plan & Zoning Commission,* 152 Conn. 7, 11, 202 A.2d 241; *Woodford* v. *Zoning Commission,* 147 Conn. 30, 32, 156 A.2d 470. When acting in such a capacity, it is subject to the general rule that it may modify its enactments whenever time and experience reasonably indicate the need for revision. *Metropolitan Homes, Inc.* v. *Town Plan & Zoning Commission,* supra. A substantial change in the overall character of a town is a change which affects every part of that town. The commission in this case based its action, in part, on a substantial increase in Ridgefield's total population and the resulting need for appropriate housing to accommodate such classes of people as school teachers, retired persons, and executives of certain industries which had recently located in the town. This evolution in the character of the town, not limited in its effect to any one specific area, produced a change in conditions which the zoning commission could properly take into account in amending the zoning regulations. Its action in this case was not shown to be an unreasonable exercise of its discretion in meeting these changing conditions. See *Miss Porter's School, Inc.* v. *Town Plan & Zoning Commission,* 151 Conn. 425, 430, 198 A.2d 707; *Zandri* v. *Zoning Commission,* 150 Conn. 646, 650, 192 A.2d 876; *Luery* v. *Zoning Board,* 150 Conn. 136, 146, 187 A.2d 247.

The zoning authority, acting as a legislative body, may amend or modify zoning ordinances or regulations when the growth and progress of the town require it, or where it is for the general welfare of

the community. *Hills* v. *Zoning Commission,* 139 Conn. 603, 608, 96 A.2d 212; see 101 C.J.S., Zoning, § 81, and cases cited. By necessity a comprehensive plan must undergo changes. "If any zoning plan is to be really comprehensive, it must be kept up to date. . . . A plan may . . . become quite obsolete where there is a refusal to recognize changing conditions in a community." 1 Yokley, Zoning Law and Practice (3d Ed.) § 3-6. Zoning regulations cannot remain static or immutable; changing conditions require orderly changes. *Luery* v. *Zoning Board,* supra; *Rodgers* v. *Village of Tarrytown,* 302 N.Y. 115, 121, 96 N.E.2d 733. The zoning commission is under a duty reasonably to anticipate future conditions which could affect the public welfare. *Corsino* v. *Grover,* 148 Conn. 299, 310, 170 A.2d 267.

The plaintiffs also make the claim that the action of the commission constituted spot zoning. The practice of spot zoning, in the sense of an illegal exercise of the zoning power, has been generally defined as the reclassification of a small area of land in such a manner as to disturb the tenor of the surrounding neighborhood. *Guerriero* v. *Galasso,* 144 Conn. 600, 607, 136 A.2d 497. It should be clear from what has already been said in relation to the general neighborhood involved in this case, as well as from what we said in *Zandri* v. *Zoning Commission,* supra, that the characterization of spot zoning is not applicable to the facts of the present case. See *DeMeo* v. *Zoning Commission,* 148 Conn. 68, 73, 167 A.2d 454.

Section 8-3 of the General Statutes requires that the commission hold a public hearing as a prerequisite to amending the zoning regulations. This statutory provision implies that there be adequate opportunity for the expression of views by both propo-

nents and opponents in regard to any contemplated amendments. See *State ex rel. Spiros* v. *Payne,* 131 Conn. 647, 649, 41 A.2d 908. The plaintiffs' final claim is that the commission violated this requirement by holding an executive session, approximately one week after it had conducted a proper public hearing, at which it accepted an aerial map and a sketch from the defendant Tuccio. It does not appear that this claim was raised in or passed on by the trial court, and therefore there is nothing in the record before us upon which a determination of this claim can be made.

There is no error.

In this opinion the other judges concurred.